UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

EAN J. TOBIASON,

        Plaintiff,

        v.                                         Case No. 24-cv-0590-bhl

BMO BANK N.A.,

        Defendant.

## ORDER ON MOTION TO REMAND

      Plaintiff Ean J. Tobiason filed this putative class action in Milwaukee County Circuit Court alleging that Defendant BMO Bank N.A. violated Wisconsin law in connection with its calculation and reporting of a claimed deficiency following BMO's repossession and sale of Tobiason's car. BMO removed the case to this Court, invoking two different theories of federal jurisdiction: (1) federal question jurisdiction under 28 U.S.C. §1331, and, in the alternative, (2) Class Action Fairness Act (CAFA) jurisdiction under 28 U.S.C. §1332(d)(2). Tobiason has moved for a remand, insisting that his claims arise under state law and arguing that BMO has not shown that the requirements for CAFA jurisdiction are satisfied. Because the Court agrees with Tobiason that it lacks subject matter jurisdiction, Tobiason's motion will be granted and the case remanded to state court.[1]

## BACKGROUND

      Tobiason purchased a used 2015 Ford Fiesta from a local Wisconsin car dealer in December 2018. (ECF No. 1 at 12–13.) He arranged financing for the purchase through the dealer, which later assigned his loan to BMO. (*Id.*) In October 2023, after Tobiason failed to make payments due on the loan, BMO repossessed the car. (*Id.* at 13.) BMO then notified Tobiason that it would sell the car, credit him with the proceeds, and hold him liable for any deficiency. (*Id.*

---

[1] BMO has moved to dismiss Tobiason's claims on the merits. (ECF No. 11.) Given the jurisdictional ruling, BMO's motion to dismiss will be denied without prejudice; it may renew its motion before the state court, which has jurisdiction to decide it.

at 13–14.) According to Tobiason, BMO proceeded to miscalculate the deficiency and attempted to collect money from him that he does not owe. (*Id*. at 14–15.) He also contends that BMO reported the miscalculated deficiency to multiple credit reporting agencies. (*Id*. at 14.)

Based on these factual allegations, Tobiason asserts six state law claims, which he seeks to pursue individually and on behalf of a class of similarly situated borrowers. (*Id.* at 15–26.) In Counts I through V, Tobiason claims BMO violated various provisions in Wisconsin's version of Article 9 of the Uniform Commercial Code. (*Id.* at 22–26.) Count I alleges a violation of Wis. Stat. §409.610 based on BMO's failure to dispose of the loan collateral in a commercially reasonable manner. (*Id.* at 22–23.) In Count II, Tobiason claims BMO violated Wis. Stat. §409.611 by failing to provide reasonable notice of the disposition of the collateral. (*Id.* at 23.) Count III alleges a violation of Wis. Stat. §409.614 based on BMO's failure to provide statutorily mandated disclosures in its post-repossession notice. (*Id.* at 24.) In Count IV, Tobiason claims BMO violated Wis. Stat. §409.616(2) by providing an insufficient explanation of its deficiency calculation. (*Id.* at 24–25.) Count V invokes Wis. Stat. §409.625, which authorizes injunctive relief for violations of Article 9. (*Id.* at 25–26.) In Count VI, Tobiason requests an injunction prohibiting BMO from future wrongful collection activities and from reporting adverse information about him to credit reporting agencies. (*Id.* at 26.)

## ANALYSIS

A state court defendant can remove a civil action to federal court if the district court has original jurisdiction over the action. 28 U.S.C. §1441(a). When jurisdiction is lacking, the district court must remand the case to state court. 28 U.S.C. §1447(c). As the proponent of federal jurisdiction, a removing defendant bears the burden of establishing jurisdiction. *Steel Co. v. Citizens for a Better Env't,* 523 U.S. 83, 103–04 (1998); *Schur v. L.A. Weight Loss Ctrs., Inc.*, 577 F.3d 752, 758 (7th Cir. 2009). Given the federalism interests at play, the Seventh Circuit has instructed courts to "interpret the removal statute narrowly, resolving any doubt in favor of the plaintiff's choice of forum in state court." *Schur*, 577 F.3d at 758.

Tobiason argues this case must be remanded because the Court lacks subject matter jurisdiction. Invoking the well-pleaded complaint rule, *see Franchise Tax Bd. v. Constr. Laborers Vacation Tr.,* 463 U.S. 1, 27–28 (1983), Tobiason insists his claims are based solely on state law. (ECF No. 10 at 3–8.) He further contends that BMO has failed to show that the requirements for CAFA jurisdiction are met. (*Id*. at 8–12.) BMO disputes these points and insists that this Court's

jurisdiction is sound on both federal question and CAFA grounds. (ECF No. 13.) The Court agrees with Tobiason; this Court has neither federal question nor CAFA jurisdiction over Tobiason's claims. Accordingly, the motion to remand will be granted and the case returned to state court.

I. **Tobiason's Complaint Does Not Allege Federal Claims or Otherwise Support Federal Question Jurisdiction.**

All six counts of Tobiason's complaint are expressly premised on state law. (ECF No. 1 at 22–26.) BMO nevertheless insists this Court has federal question jurisdiction under two alternate theories. First, BMO invokes *Grable & Sons Metal Products, Inc. v. Darue Engineering & Manufacturing,* 545 U.S. 308, 312 (2005), and argues that this is one of the rare cases where a federal question is so intertwined with state law claims that the lawsuit should be deemed to "arise under" federal law within the meaning of Section 1331 even though only state law claims are pleaded. (ECF No. 13 at 5–9.) Second, BMO argues the Fair Credit Reporting Act (FCRA) completely preempts Tobiason's state law claims, effectively transforming them into federal causes of action. (*Id*. at 9–14.) Tobiason denies that either theory supports jurisdiction here. (ECF Nos. 10 & 15.)

   A. **BMO's Invocation of *Grable* Is Misplaced.**

As a general matter, a case can only be removed under the Court's federal question jurisdiction when the state court complaint asserts a federal law cause of action on its face. *Rice v. Panchal*, 65 F.3d 637, 639 (7th Cir. 1995). In *Grable*, the Supreme Court recognized a "special and small category" of cases that are an exception to this rule. *Empire Healthchoice Assurance, Inc. v. McVeigh*, 547 U.S. 677, 699–701 (2006) (citing *Grable*, 545 U.S. at 310–13). This exception is narrow, however, and the Supreme Court has emphasized that *Grable* jurisdiction is rarely appropriate. *See id.*; *see also Gunn v. Minton*, 568 U.S. 251, 258 (2013). Courts may exercise federal question jurisdiction over a state law claim under *Grable* only if the federal issue is: "(1) necessarily raised, (2) actually disputed, (3) substantial, and (4) capable of resolution in federal court without disrupting the federal-state balance approved by Congress." *Gunn*, 568 U.S. at 258. Also, the *Grable* exception does not change the fundamental rule that the mere existence of a federal defense does not create original federal jurisdiction. *Chi. Trib. Co. v. Bd. of Trs.*, 680 F.3d 1001, 1003 (7th Cir. 2012).

BMO contends that Counts V and VI of Tobiason's complaint, which seek equitable relief under Wis. Stat. §409.625 and the Court's general equitable powers, fall within this special and small category of claims supporting federal jurisdiction because they necessarily raise a federal law question under the FCRA. (ECF No. 13 at 6–9.) BMO misunderstands the limited parameters of "embedded federal question" jurisdiction under *Grable*. A case does not arise under federal law, within the meaning of Section 1331 and *Grable*, simply because federal issues or defenses might be raised in connection with state law claims. *See Hartland Lakeside Joint No. 3 Sch. Dist. v. WEA Ins. Corp.*, 756 F.3d 1032, 1033–34 (7th Cir. 2014). Only where a plaintiff's right to relief "necessarily" depends on resolution of a "substantial" question of federal law is federal jurisdiction available and removal appropriate. *Gunn,* 568 U.S. at 258. In other words, the presence of a federal issue is not enough; the federal question must be "baked into the middle" of the plaintiff's entitlement to relief. *See Progressive Express Ins. Co. v. Harry's Truck Serv., LLC*, 688 F.Supp.3d 773, 778 (N.D. Ill. 2023).

BMO's invocation of *Grable* fails because none of the claims in Tobiason's complaint necessarily depends on a question of federal law, substantial or otherwise. The first five counts are based on alleged violations of Wisconsin's version of Article 9 of the UCC and therefore unquestionably depend on state law. (*See* ECF No. 1 at 22–26.) None of the elements of any of these claims depends on federal law. Count VI invokes the court's general equitable powers, the exercise of which (pre-removal) would not have anything to do with federal law but would arise from the inherent power of the state court. (*Id*. at 26.) A state law claim necessarily raises a question of federal law within the meaning of *Grable* only if it is "impossible to decide" the state law claim without deciding a federal law issue. *See Hartland Lakeside*, 756 F.3d at 1035. That is simply not the case with any of the claims here. The merits of the claims rest on Wisconsin's version of the UCC, not federal law.

Nor do Tobiason's requests for injunctive relief in Counts V and VI of his complaint transform his state law claims into claims arising under federal law. Both counts simply seek a specific type of remedy, authorized by Wisconsin law, for underlying violations of Wisconsin's Article 9. Neither count relies upon federal law in any way. Wisconsin uses the term "temporary injunction," but the requirements for obtaining this form of relief are the same as the proof needed to obtain a preliminary injunction in federal court. *See Milwaukee Deputy Sheriffs' Ass'n v. Milwaukee County*, 883 N.W.2d 154, 161 (Wis. Ct. App. 2016). A Wisconsin court will issue a

temporary injunction "when the moving party demonstrates four elements: (1) the movant is likely to suffer irreparable harm if a temporary injunction is not issued; (2) the movant has no other adequate remedy at law; (3) a temporary injunction is necessary to preserve the status quo; and (4) the movant has a reasonable probability of success on the merits." *Id.* While element four requires an analysis of the merits of the underlying claim, Tobiason's underlying claims are all premised on state law, specifically violations of Wis. Stat. §§409.610, 409.611, 409.614, and 409.616(2). Nothing in Tobiason's requests for injunctive relief, as pleaded in Counts V and VI, will necessarily require resolution of a federal issue.

BMO further contends that because the FCRA prohibits Tobiason from obtaining injunctive relief, his request for such relief presents a "substantial, disputed federal question." (ECF No. 13 at 9.) BMO cites language in *Grable* emphasizing "the importance of not 'disturbing any congressionally approved balance of federal and state judicial responsibilities.'" (*Id.* (quoting *Grable*, 545 U.S. at 314).) Based on this language, BMO urges the Court to accept jurisdiction because a remand of Tobiason's claims, including his requests for equitable relief, "would disrupt the balance of responsibilities that Congress has set forth in the FCRA." (*Id.*)

BMO again misunderstands the limited application of *Grable*. Tobiason's claims are based solely on state law and he is seeking remedies that are, at least theoretically, available under state law. If BMO is correct that the FCRA bars his request for an injunction, then BMO will have a federal defense to one aspect of Tobiason's requested relief—an injunction against BMO's reporting of false information to credit reporting agencies. But it is black-letter law that the existence of a federal defense does not give rise to federal question jurisdiction and nothing in *Grable* changes that fundamental point. *See Chi. Trib.*, 680 F.3d at 1003. The state court is equally capable of applying BMO's federal law defense and the existence of that defense does not provide a basis for this Court to assert federal question jurisdiction.

In *Chicago Tribune,* the Seventh Circuit concluded jurisdiction was lacking over a federal lawsuit filed by the Chicago Tribune seeking a ruling that it was entitled to access to documents from the University of Illinois. *Id.* at 1006. Although the newspaper's claims were based on the Illinois Freedom of Information Act, the parties argued that federal question jurisdiction was proper under *Grable* because the university's refusal to produce them was based on federal law, specifically, the Family Education Rights and Privacy Act of 1974. *Id.* at 1002–03. The Court of Appeals rejected this argument, emphasizing that the newspaper's claim for the documents "arises

under state law, and *only* state law; the Tribune's request for the information does not depend on even a smidgeon of federal law." *Id*. at 1004 (emphasis in original). It further explained that while the university had a potential defense under federal law (along with other potential state law defenses), the existence of a federal defense did not support federal question jurisdiction. *Id*. at 1003–04.

While *Chicago Tribune* involved a declaratory judgment action, rather than a case removed from state court, its jurisdictional analysis is directly applicable here. The fact that BMO may have a defense based on federal law, even if clear cut, does not mean that Tobiason's case arises under federal law. *Id.*; *see also Hartland Lakeside*, 765 F.3d at 1033–36 (vacating judgment after concluding that the presiding magistrate judge had misapplied *Grable* in exercising federal question jurisdiction over state law claims that implicated Section 1102 of the Patient Protection and Affordable Care Act, 42 U.S.C. §18002).

### B. The FCRA Does Not Completely Preempt Tobiason's State Law Claims.

The Supreme Court has also recognized that a federal court may have original jurisdiction over a lawsuit, even in the absence of the pleading of a federal claim, when a federal statute completely preempts a state law cause of action, necessarily transforming a state law claim into a federal one. *Beneficial Nat'l Bank v. Anderson*, 539 U.S. 1, 8 (2003). The Seventh Circuit has noted that "complete preemption" can cause confusion because it imports the term "preemption," a substantive constitutional doctrine under the Supremacy Clause, into the different context of federal jurisdiction. *See Speciale v. Seybold*, 147 F.3d 612, 615 (7th Cir. 1998) (citing *Lister v. Stark*, 890 F.2d 941, 943 n.1 (7th Cir. 1989)). Complete preemption is only indirectly related to the Supremacy Clause or to substantive preemption. *See id.* Complete preemption provides an exception to the well-pleaded complaint doctrine, allowing removal of a case involving state law claims in situations where Congress has expressly intended that federal law so completely cover a particular subject matter that all claims in that area are deemed federal in nature. *See Metro. Life Ins. Co. v. Taylor*, 481 U.S. 58, 63–64 (1987). For example, a claim for benefits under an ERISA plan, although facially a state law breach of contract cause of action, is deemed a federal claim because ERISA completely preempts all state law claims. *Aetna Health Inc. v. Davila*, 542 U.S. 200, 208–09 (2004).

Unlike other forms of preemption, complete preemption is rare. The Supreme Court has recognized the application of complete preemption in just three settings: ERISA, Section 301 of

the Labor Management Relations Act, and Section 30 of the National Bank Act. *See Roddy v. Grand Trunk W. R.R., Inc.*, 395 F.3d 318, 323 (6th Cir. 2005) (collecting cases); *Martin v. Petersen Health Operations, LLC*, No. 20-cv-1449, 2021 WL 4313604, at *7 (C.D. Ill. Sept. 22, 2021).

BMO argues that the FCRA completely preempts Tobiason's claims, permitting removal even though he has pleaded them solely in state law terms. (ECF No. 13 at 9–14.) BMO points to 15 U.S.C. §1681t(b), a part of the FCRA that preempts state laws that conflict with certain provisions within the FCRA. (*Id*. at 10.) Citing *Purcell v. Bank of America*, 659 F.3d 622 (7th Cir. 2011), BMO contends the Seventh Circuit has recognized that Section 1681t provides complete preemption of state law claims relating to the duties of furnishers of information to credit reporting agencies and thus confirming that federal jurisdiction is proper here. (*Id.* at 10–11.) BMO misreads *Purcell* and confuses substantive preemption with complete preemption.

In *Purcell*, a debtor filed a complaint in state court alleging that her bank falsely reported to credit agencies that she was behind on her loan payments even though it knew she was not. 659 F.3d at 623. Concluding that she was suing for a violation of the FCRA, the bank removed the case to federal court and then sought dismissal on grounds that the FCRA does not provide a private right of action for wrongful reporting to a credit agency (enforcement is left to state and federal agencies). *Id*. The district court granted the bank's motion and dismissed any federal claims. *Id*.[2] The bank further argued that to the extent the debtor also attempted to assert claims under state law, those claims should be dismissed because they were preempted by Section 1681t(b) of the FCRA. *Id.* Rather than simply remanding any state law claims back to the state court—the normal federal court approach once all federal claims are resolved—the district court proceeded to rule on the bank's Section 1681t(b) argument and rejected its defense, concluding that the FCRA did not preempt the debtor's state law claims. *Id.* It then dismissed the debtor's claims without prejudice. *Id*. On appeal, the Seventh Circuit rejected the district court's interpretation of Section 1681t, concluded the statute preempted the debtor's state law claims, and remanded the case with instructions "to enter judgment for the Bank on all of [the debtor's] claims, state and federal alike." *Id*. at 623–26.

---

[2] The debtor filed a two-page complaint that appears not to have identified a specific cause of action. *See Purcell v. Bank of America*, No. 09 CV 356, 2010 WL 4955542, at *1 (N.D. Ind. Nov. 30, 2010), *rev'd*, 659 F.3d 622 (7th Cir. 2001). Both the bank and the district court concluded she intended to raise a federal claim under the FCRA as well as state law causes of action. *See id.*, at *5.

Contrary to BMO's argument, *Purcell* does not stand for the proposition that the FCRA completely preempts state law claims. In fact, the Seventh Circuit's decision does not use the words "complete preemption" at all. The case supports BMO's defense—that Section 1681t substantively preempts state law claims—and BMO can certainly invoke *Purcell* in response to Tobiason's claims. But *Purcell* is not a removal jurisdiction case. As noted above, the existence of a federal defense, even a plainly meritorious one, does not create grounds for removal on federal question jurisdictional grounds.

BMO also cites a per curium decision from the Second Circuit, *Macpherson v. JP Morgan Chase Bank N.A.*, 665 F.3d 45 (2nd Cir. 2011), insisting that it too supports removal. (ECF No. 13 at 11–12.) But *Macpherson*, like *Purcell*, is not a complete preemption case. While the original case was removed to the district court from state court, the Second Circuit's decision does not address the propriety of the removal and does not mention "complete preemption" as a jurisdictional doctrine at all. The case cites *Purcell* in support of its similar analysis of the scope of the substantive preemption provided in Section 1681t. *See Macpherson*, 665 F.3d at 47–48. BMO again confuses the substantive doctrine of preemption with the jurisdictional doctrine of complete preemption.

BMO has not shown that Congress intended Section 1681t of the FCRA to so completely preempt matters that any state law claims relating to credit reporting should be deemed to arise under the federal FCRA. Indeed, BMO admits that the FCRA does not provide for a private cause of action for injunctive relief. (ECF No. 13 at 8–9.) In this circumstance, the Court cannot conclude that federal law provides the exclusive cause of action for the claims Tobiason asserts—indeed there is no such federal cause of action for his claims for injunctive relief. *See Martin*, 2021 WL 4313604, at *7 (rejecting complete preemption removal jurisdiction under the PREP Act given the absence of a statutory federal private right of action). Accordingly, the Court rejects BMO's suggestion that it has federal question jurisdiction on complete preemption grounds.

## II.  BMO Has Not Established CAFA Jurisdiction.

BMO offers an alternative theory of removal jurisdiction based on the Class Action Fairness Act. (ECF No. 13 at 14–19.) CAFA permits removal of state court class actions where (1) the putative class includes 100 or more members; (2) at least one plaintiff is diverse from at least one defendant; and (3) the aggregate amount in controversy exceeds $5 million. 28 U.S.C. §1332(d)(2), (5); *Hart v. FedEx Ground Package Sys. Inc.*, 457 F.3d 675, 677 (7th Cir. 2006).

Tobiason does not dispute that the proposed class exceeds 100 members or that at least one class member and BMO satisfy the diversity element of CAFA jurisdiction. (*See* ECF No. 15 at 9–10.) Tobiason's jurisdictional challenge is based solely on his assertion that the amount in controversy does not exceed $5 million. (ECF No. 10 at 8–12.)

As the removing party, BMO bears the burden of showing that CAFA's jurisdictional requirements, including the amount in controversy, have been met. *See Schutte v. Ciox Health, LLC*, 28 F.4th 850, 854 (7th Cir. 2022). To meet this burden, BMO may rely on a variety of sources, including the allegations of the complaint, Tobiason's informal estimates, and affidavits from employees or experts. *Id*. The Court applies a preponderance of the evidence standard to these submissions. *Id*. If BMO can show a good faith estimate that is plausibly supported by evidence, the case will remain in federal court unless it is legally impossible for the plaintiff to recover that amount. *Id*.

To support its CFA removal, BMO cites to Tobiason's complaint and then extrapolates his individual damages to the entire class using a sworn declaration from Donahyl Hottinger, BMO's Senior Manager of US Collections. (ECF No. 13 at 16–19.) BMO reports that Tobiason's complaint alleges individual damages of $10,229.28, exclusive of interest and attorneys' fees, based on the amount of his principal obligation, finance charges, and Tobiason's claim for statutory damages. (*Id*. at 16.) While the complaint alleges there may be "thousands" of class members, the Hottinger declaration confirms the putative class consists of just 269 members. (*Id*. at 17.) Using Tobiason's damages theory, Hottinger calculates the classwide damages as totaling $4,669,515.57. (*Id*. at 17–18.) To this total, BMO then adds estimated attorneys' fees of $466,951.56, putting the aggregate amount in controversy at $5,136,467.13. (*Id*. at 18–19.)

Tobiason agrees with BMO's math and accepts that for jurisdictional purposes the Court can assume the total classwide damages are $4,669,515.57. (*See* ECF No. 15 at 10.) But he challenges BMO's use of attorneys' fees to push the amount in controversy over the $5 million threshold. (*Id*.) Tobiason notes that BMO's analysis ascribes to him and the class a claim for violation of the Wisconsin Consumer Act and thus the right to recover reasonable attorneys' fees under Wis. Stat. §425.308. (*Id.*; *see also* ECF No. 13 at 18.) Tobiason emphasizes that his state law claims arise under Wisconsin's version of the UCC and he makes no claim under the Wisconsin Consumer Act, rendering BMO's inclusion of attorneys' fees in the amount in controversy calculation improper. (ECF No. 15 at 10.) He also notes that to the extent counsel

seek fees for representing the class, any such recovery would be deducted from the "common fund" recovered and would therefore not add to the classmembers' actual damages. (*Id.* (citing ECF No. 1 at 22).)

The Court agrees with Tobiason. As the Seventh Circuit explained in *Gardynski-Leschuck v. Ford Motor Co.*, 142 F.3d 955, 958 (7th Cir. 1998), attorneys' fees may count towards the amount in controversy for jurisdictional purposes only when the prevailing party is entitled to recover them as part of its damages, whether by contract or statute. But Tobiason's state law claims do not include a right to recover attorneys' fees. Tobiason has made no claim on behalf of himself or the class under the Wisconsin Consumer Act or any other legal theory that would warrant including additional attorneys' fees in the amount in controversy. Accordingly, BMO has shown by a preponderance of the evidence that the amount in controversy is just over $4.6 million. Because this is insufficient to support CAFA removal jurisdiction, the Court rejects this theory of removal too.

**III.     The Court Will Deny Plaintiff's Request for Attorneys' Fees.**

In connection with his motion to remand, Tobiason asks the Court to enter an award of attorneys' fees in his favor under 28 U.S.C. §1447(c). (ECF No. 10 at 14.) He accuses BMO of "gamesmanship" by removing this lawsuit and then refusing to provide evidentiary support for its CAFA jurisdictional claims. (*Id.*)

Section 1447(c) provides that a remand order "may require payment of just costs and any actual expenses, including attorney fees, incurred as a result of the removal." In *Martin v. Franklin Capital Corp.*, the Supreme Court explained that this provision neither requires nor creates a strong presumption in favor of awarding fees in connection with a remand order. 546 U.S. 132, 140–41 (2005). Rather, whether to award fees is left to the court's judgment and discretion upon an analysis of the reasonableness of the removal. *Id*. at 141. Accordingly, absent unusual circumstances, a court should award fees "only where the removing party lacked an objectively reasonable basis for seeking removal." *Id*.

Here, the record confirms that BMO's attempt at removal, while flawed, was not objectively unreasonable. Application of *Grable* and the complete preemption removal doctrine can be complicated. Neither legal theory is straightforward. As to the former, courts have acknowledged that *Grable* uses language that can be misleading if read broadly. *See Hartland Lakeside*, 756 F.3d at 1033–34; *see also Empire Healthchoice*, 547 U.S. at 699–701. And with

respect to the latter, the precedents often take pains to emphasize the confusion that arises between the substantive preemption doctrine and the jurisdictional construct of complete preemption. *See, e.g.*, *Speciale*, 147 F.3d at 615 (citing *Lister*, 890 F.2d at 943 n.1). In these circumstances, the Court will not conclude that BMO's efforts to secure federal jurisdiction were objectively unreasonable. Tobiason's request for fees and costs is denied.

## CONCLUSION

Accordingly,

**IT IS HEREBY ORDERED** that Plaintiff's Motion to Remand, ECF No. 10, is **GRANTED**. The case is remanded to state court for further proceedings. Defendant BMO's motion to dismiss, ECF No. 11, is **DENIED without prejudice** as moot, given this Court's lack of subject matter jurisdiction. Plaintiff's request for attorneys' fees and costs is **DENIED**.

Dated at Milwaukee, Wisconsin on December 5, 2024.

s/ *Brett H. Ludwig*  
BRETT H. LUDWIG  
United States District Judge